■ In the Matter of ALBERT A. LAVERNE, Petitioner, v THOMAS SOBOL, as Commissioner of Education of the State of New York, Respondent.—Mikoll, J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law former § 6510 [5]) to review a determination of respondent which revoked petitioner's license to practice medicine in New York.

In April 1979 a disciplinary proceeding was commenced against petitioner, a physician duly licensed to practice medicine in New York, charging him with practicing the profession of medicine fraudulently and with unprofessional conduct within the meaning of Education Law § 6509 (2) and (9). An amendment to the charges in December 1980 added a charge of practicing medicine while his ability to practice was impaired by physical or mental disability in violation of Education Law § 6509 (3).

Although the first hearing before the Hearing Panel was

scheduled for June 22, 1979, it was adjourned at petitioner's request several times and the hearings were not commenced until October 3, 1980. Hearings were then held on various dates thereafter and the last substantive evidence was presented in October 1981. Further adjournments were then granted due to the deterioration of petitioner's health and his incapacitation related with his health conditions. During the course of these adjournments, one of the members of the Hearing Panel died and was not replaced. Ultimately, the Hearing Panel decided to call a special hearing to be held January 30, 1985 to take testimony from petitioner's physician and to consider how this matter should proceed due to petitioner's poor health.

After testimony was taken from petitioner's physician, the State announced that it was resting its case. In its determination, the Hearing Panel offered to discontinue the matter if petitioner would turn his license over to the Education Department with the proviso that if petitioner's health improved, he could apply to the Department for a new registration. If petitioner did this, the State could then seek to resume the disciplinary proceeding against petitioner. If the proceeding resumed, petitioner then had the option of proceeding by affidavit with cross-examination by the State waived. Petitioner declined to accept any of the options presented in the Hearing Panel's determination and the hearing was resumed at the State's request on July 25, 1986 for the presentation of evidence.

Prior to this next hearing, 1 of the 4 remaining members of the Hearing Panel moved out of State and resigned, leaving but 3 original members. Two new members were then appointed to create a five-member Hearing Panel. The new members stated on the record that they had reviewed the matter and were fully apprised of the proceedings up to that point. Another adjournment was then granted so that petitioner's counsel could prepare his defense. At this last hearing on August 15, 1986, petitioner's counsel requested a further adjournment and also objected to proceeding with the hearing with the two substituted members. After the adjournment was denied and the objection overruled, petitioner's counsel rested without presenting any evidence.

On August 8, 1987, the Hearing Panel issued its report finding petitioner guilty of, *inter alia,* (1) fraud in misrepresenting to a patient that carbon dioxide therapy was reimbursable by Medicare as neurological treatment when he submitted the claim as a nonneurological treatment at a

lesser rate, (2) fraudulent billing in assessing a patient for 4 treatments per day when he gave only 1 or 2 treatments per day, and (3) unprofessional conduct in advertising professional superiority and special abilities, and in advertising not in the public interest by stating that "the Lord" had given him certain photographs and divine healing energy in conjunction with his medical treatments. The Hearing Panel recommended revocation of petitioner's license to practice medicine.

The Regents Review Committee unanimously recommended that the Board of Regents adopt the findings and recommendations of the Hearing Panel. The Board of Regents voted to accept the recommendation and respondent issued an order revoking petitioner's license to practice medicine. Petitioner then initiated this CPLR article 78 proceeding to annul the revocation order.

Initially, we find no merit to petitioner's contention that the findings, determination and recommendation of the Hearing Panel should be deemed invalid because of the replacement of two of its members after the commencement of the hearing in alleged violation of Education Law § 6510 (3) (c). This section, which relates to the conduct of the hearing, provides in pertinent part as follows: "A hearing which has been initiated shall not be discontinued because of the death or incapacity to serve of one member of the hearing panel" (Education Law § 6510 [3] [c]). Petitioner argues that, instead of replacing the Hearing Panel members, the matter should have been discontinued. Petitioner asserts that a plain reading of the provision required that the hearings should have been ended and commenced again de novo. Respondent counters that the provision only limits the Hearing Panel's ability to discontinue a hearing, not its ability to continue it.

In our view the interpretation urged by respondent is correct. Respondent's interpretation is consistent with the legislative scheme. Education Law § 6510 provides that a Hearing Panel shall consist of *"five or more* members" (Education Law § 6510 [3] [b] [emphasis supplied]), and that "a minimum of four of the voting members of the panel" must vote the accused guilty of the charge or charges to make a determination of guilty (Education Law § 6510 [3] [d]). For example, it is possible for seven members to be appointed to a Hearing Panel. If 2 of the members became incapacitated 5 members would still be left. Under petitioner's interpretation, since more than one member of the panel was incapacitated to serve, the hearing would have to be discontinued and a new panel appointed to hear the matter de novo. Similarly, if 6

members were appointed to the original panel, and 2 were incapacitated to serve, 4 would remain, sufficient to make a determination of guilt but, under petitioner's reasoning, the panel would have to be discontinued. Petitioner's interpretation therefore would bring about inconsistent results, certainly not intended by the Legislature and contrary to the purposes for which the legislation was enacted *(see, Matter of New Castle v Kaufmann,* 72 NY2d 684, 686; *see also, Matter of Doe v Axelrod,* 71 NY2d 484, 489), which was to reform the disciplinary process and improve its efficiency and effectiveness *(supra; see,* Enforcing Professional Discipline: A Program For Reform, Joint Legislative Report, May 1980, at 28). The discretion of the Hearing Panel to determine to continue in the event more than one member must be replaced is not limited by Education Law § 6510 (3) (c).

We also reject petitioner's claim that the Hearing Panel violated the Education Law by conducting proceedings with less than five members present. Education Law § 6510 (3) (b) provides: "Hearing panel. The hearing shall be conducted by a panel of five or more members, at least four of whom shall be members of the applicable state board for the profession, and at least one of whom shall be a public representative". However, the quoted provision does not require, as petitioner asserts, that at least five panel members be present at a hearing for the findings to be valid *(see, Matter of Freymann v Board of Regents,* 102 AD2d 912, *appeal dismissed* 64 NY2d 645).* As long as the transcripts of the proceedings missed were available to the absent members, enabling them ultimately to make an informed decision, there is no deprivation of due process *(supra; see, Matter of Taub v Pirnie,* 3 NY2d 188, 194). In the case at bar the record indicates that the new members of the Hearing Panel read the earlier transcripts to familiarize themselves with the matter.

Finally, we find no merit to petitioner's contention that the Hearing Panel violated petitioner's due process rights and the Education Law by continuing hearings during a period when petitioner was physically and emotionally incapacitated from attending the hearings. The absence of the accused at an administrative hearing is not violative of his right to due process as long as he has been notified of the hearing and afforded an opportunity to be heard *(see, Matter of Lazachek v Board of Regents,* 101 AD2d 639, 640-641, *lv denied* 63 NY2d 608; *Matter of Dorsey v Board of Regents,* 87 AD2d 728, 729). Although petitioner was unable to attend these hearings because of ill health, he had notice thereof and was afforded

the opportunity to be heard. Moreover, in view of the fact that there were numerous adjournments granted petitioner over the years and he was in possession of his license to practice medicine, the Hearing Panel's denial of petitioner's request for a further adjournment was not unreasonable and did not deprive petitioner of due process *(see, Matter of Ciofalo v Board of Regents,* 23 AD2d 926, 927, *lv denied* 16 NY2d 481, *cert denied* 382 US 942).

Determination confirmed, and petition dismissed, without costs. Weiss, J. P., Mikoll, Yesawich, Jr., Levine and Harvey, JJ., concur.