■ In the Matter of DONALD BRIGGS, Petitioner, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.—Yesawich Jr., J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Education Law former § 6510-a [4]) to review a determination of the Commissioner of Education which revoked petitioner's license to practice medicine in New York.

The State Board for Professional Medical Conduct charged petitioner, a licensed physician specializing in hematology and oncology in New York City, with three charges of professional misconduct. In particular, petitioner was charged with two specifications of willful abuse of a patient and one specification of conduct evidencing a moral unfitness to practice medicine. The charges stemmed from petitioner's alleged sexual contact with patients A and B.

Administrative hearings were conducted before the Hearing Committee on various dates between October 4, 1989 and September 7, 1990. Immediately prior to presentation of rebuttal evidence by the Department of Health, the Committee Chair stepped down due to illness and was replaced by a new panel member. The latter, in accordance with the requirements of Public Health Law § 230 (former [10] [f]), affirmed that he had read the transcripts of all prior testimony. After the hearing was completed the Hearing Committee unanimously found that petitioner had inappropriate sexual contact with the two patients, sustained the three specifications and recommended that petitioner's license to practice medicine be revoked. The Commissioner of Education issued an order implementing respondent's acceptance, with slight modification, of the Hearing Committee's findings of fact and revoked petitioner's license. This CPLR article 78 proceeding ensued.

Initially, petitioner contends that he was denied a fair

hearing in violation of his right to due process because the substitute member of the Hearing Committee was not present during the bulk of the evidence-taking portion of the hearing. Inasmuch as the ultimate findings turned on the credibility of witnesses, and the substitute panel member was not present while the witnesses were testifying, petitioner asserts that the hearing was unfair.

We are not persuaded that petitioner's rights were infringed. Public Health Law § 230 (former [10] [f]) provides that "[a] hearing which has been initiated shall not be discontinued because of the * * * incapacity to serve of one member of the hearing committee", and requires that the substitute member "affirm in writing that he [or she] has read and considered evidence and transcripts of the prior proceedings". Although review of a written record is not the best means of judging witness credibility, it does afford a satisfactory basis for respondent to make the ultimate resolution of credibility issues in these cases (Matter of Carrera v Sobol, 163 AD2d 706, 708, affd 77 NY2d 931). Furthermore, such review fulfills the requirements of due process even when one or more members of the Hearing Committee must be replaced (Matter of Laverne v Sobol, 149 AD2d 758, 761, lv denied 74 NY2d 610; see, Matter of Osher v University of State of N. Y., 162 AD2d 849). Because the record discloses that the Hearing Committee, as it was ultimately constituted, made an informed decision after a full discussion of all of the testimony, there is no reason to disturb that decision (see, Matter of Taub v Pirnie, 3 NY2d 188, 194-195).

Also unconvincing is petitioner's contention that the determination of guilt by a preponderance of the evidence is not supported by substantial evidence in the record. Both patients testified that petitioner improperly touched them. Specifically, patient A, who was apparently suffering from a rare dermatological condition, testified that petitioner fondled her breasts in a manner inconsistent with a normal breast examination, including massaging the nipples for several minutes, rubbed her inner thighs, stroked and rubbed her vulva and clitoris for about one minute, and placed two ungloved fingers into her vagina for upwards of two minutes while "playing" with her pubic hair. Patient B, who was examined for an upper respiratory problem, testified that petitioner told her to remove her clothes and her bra, but provided no gown, asked her to slide her panties down so that he could examine her stomach, then quickly slipped his hand into her panties and inserted an ungloved finger into her vagina.

838

The patients' belief that such touching was inappropriate and not part of a legitimate medical examination was corroborated by two physicians. Steven Cohen, a dermatologist, testified that a full pelvic examination was not called for in patient A's situation, and that even if it was performed, stroking any area of the skin for upwards of one minute was inappropriate. Donald Belsito, petitioner's own witness, confirmed that rubbing the clitoris would not be proper during a pelvic exam and that inserting fingers into the vagina would not be appropriate unless the physician was conducting a full pelvic examination.

Petitioner claimed that the patients were medically naïve and aberrated, vigorously attacked their credibility and offered his own testimony as well as that of expert witnesses respecting the propriety of the "examinations". Determinations of witness credibility and the weight to be accorded expert testimony are, however, matters for respondent, not this Court, to resolve *(Matter of Block v Ambach,* 73 NY2d 323, 335; *Matter of Bassim v Sobol,* 178 AD2d 787, 788, *appeal dismissed, lv denied* 79 NY2d 941).

And given the seriousness of petitioner's transgressions *(see, Matter of Rojas v Sobol,* 167 AD2d 707, 709, *lv denied* 77 NY2d 806), the sanction imposed cannot be said to be injudicious. Petitioner's other contentions have been considered. They also lack merit.

Weiss, P. J., Mikoll, Crew III and Harvey, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.