■ In the Matter of BARRY S. GOLDBERG, Petitioner, v DENNIS WHALEN, as Acting Commissioner of Health of the State of New York, et al., Respondents. [708 NYS2d 749] —Lahtinen, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in New York County) to review a determination of the Administrative Review Board for Professional Medical Conduct which, *inter*

*alia*, limited petitioner's license by prohibiting him from prescribing controlled substances.

In October 1997 petitioner, a physician licensed to practice medicine in New York, was served with a statement of charges by the State Board for Professional Medical Conduct (hereinafter BPMC) involving allegations of fraud, moral unfitness to practice medicine and willfully making a false report. The charges resulted in petitioner signing a consent agreement and order on January 26, 1998 agreeing to the suspension of his license until, *inter alia*, he fulfilled certain conditions enumerated therein and to the imposition of terms of probation upon his license restoration. On February 25, 1998 the chair of the BPMC signed an order which incorporated the agreement, including the conditions and terms of probation. A copy of the consent agreement and order with conditions and terms of probation was sent to petitioner and his then-attorney, Raymond Jerymyn, by certified mail, return receipt requested on February 27, 1998 accompanied by a letter setting forth the effective date of the order.

In April 1998, respondent Commissioner of Health filed new charges against petitioner accusing him of practicing medicine while his license to do so was suspended, practicing medicine fraudulently and violating a license limitation imposed pursuant to Public Health Law § 230. These charges stemmed from petitioner's actions of practicing medicine and issuing prescriptions for the period March 16, 1998 to April 7, 1998, a time when his medical license was suspended pursuant to the earlier consent agreement and order. Based on these charges, the Commissioner determined that petitioner's continued practice of medicine constituted an imminent danger to the public and signed an order on April 21, 1998 which again prohibited petitioner from practicing medicine and scheduled a hearing before a committee of the BPMC. After the hearing, the committee of the BPMC issued an interim report recommending that the Commissioner's summary order be vacated because petitioner was found to be in compliance with the February 25, 1998 consent order suspending his license and did not present an imminent danger to the health of the people of the State. In accordance with the recommendation the Commissioner vacated the summary order.

In September 1998 the BPMC issued its determination and order dismissing the charge that petitioner fraudulently practiced medicine but sustaining the charges of practicing with a suspended license and violating a license limitation. The BPMC imposed a civil penalty of $20,000 and directed

that petitioner's license not be restored until the order resulting from the prior proceeding was complied with. Both petitioner and the Commissioner requested review of the BPMC determination by respondent Administrative Review Board of the BPMC (hereinafter ARB) (*see*, Public Health Law § 230-c [4] [a]). The ARB subsequently issued its determination and order sustaining the BPMC's determination, denying petitioner's application to reopen the prior professional misconduct proceeding or make additional factual findings relating to that proceeding, and imposing the additional sanction of limiting petitioner's professional license by prohibiting him from prescribing controlled substances.

Petitioner commenced this CPLR article 78 proceeding in Supreme Court, claiming that the actions of respondents were against their own regulations, were arbitrary and capricious, constituted an abuse of discretion and violated his right to due process of law. Petitioner sought reinstatement of his license to practice medicine, annulment of the consent order from the prior professional misconduct proceeding and annulment of the determination and order of the ARB in the current professional misconduct proceeding. The proceeding was transferred to this Court pursuant to Public Health Law § 230-c (5).

To the extent that this CPLR article 78 proceeding, which was commenced February 23, 1999, seeks an annulment of the BPMC's February 25, 1998 consent order which suspended petitioner's license to practice medicine and was admittedly served on petitioner by certified mail on March 28, 1998, such requested relief is time barred (*see*, CPLR 217; Public Health Law § 230-c [5]).

Turning to petitioner's challenge to the determinations arising from the April 1998 professional misconduct charges, it is well settled that our review of a determination by the ARB is limited to ascertaining whether it " ' "was made in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious or was an abuse of discretion" ' " (*Matter of Larkins v DeBuono*, 257 AD2d 714, 714-715, quoting *Matter of Glassman v Commissioner of Dept. of Health*, 208 AD2d 1060, 1061, *lv denied* 85 NY2d 801, quoting *Matter of Wapnick v New York State Bd. for Professional Med. Conduct*, 203 AD2d 728, 729; *see*, *Matter of Bottros v DeBuono*, 256 AD2d 1034, 1035-1036). Applying those standards of review, the ARB's determination of misconduct must be confirmed.

Petitioner admitted that he treated patients and wrote prescriptions after he was served notice of suspension of his license to practice medicine by certified mail and was informed

of such suspension by an investigator for the Office of Professional Discipline. Given these admissions, petitioner's claim that his rights were violated by the use of conversations between petitioner and his attorney regarding the effective date of his license suspension from the prior misconduct proceeding is of no consequence. We find petitioner's evidence concerning the physical and mental competency of his attorney during the prior proceeding, his testimony that he was misled by his attorney as to the effective date of the suspension of his medical license and the consequences of the consent agreement and order, and his claim that he read only part of the consent agreement which contained the conditions and terms of probation pertaining to his professional license insufficient to support a successful challenge to the ARB's determination. Further, we agree with the BPMC's finding that petitioner, a physician who is entrusted with the health and welfare of his patients, must live with the consequences of his indifference. We now turn to the penalty imposed.

The standard for our review of the sanction imposed is whether the penalty is so incommensurate with the offense as to shock one's sense of fairness (*see, Matter of Pisnanont v New York State Bd. for Professional Med. Conduct*, 266 AD2d 592; *Matter of Larkins v DeBuono, supra*; *Matter of Brown v New York State Dept. of Health*, 235 AD2d 957, 958, *lv denied* 89 NY2d 814). While each case must be judged on "its own peculiar facts and circumstances" (*Matter of Bezar v DeBuono*, 240 AD2d 978, 979; *see, Matter of Bottros v DeBuono, supra*, at 1036) prior disciplinary actions may be considered in determining a penalty (*see, Matter of Brown v New York State Dept. of Health, supra*, at 958).

Within the constraints of our limited scope of review, we find no error in the ARB's imposition of a harsher penalty than the one imposed by the committee of the BPMC (*see, Matter of Minielly v Commissioner of Health*, 222 AD2d 750, 751), particularly when it is noted that violations of license restrictions have resulted in license revocations by the ARB (*see, Matter of Kite v DeBuono*, 233 AD2d 783, 786).

Cardona, P. J., Mercure, Graffeo and Rose, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.